CASE No. 981.

## MOTES v. MADDEN.

1. Two months before attaining his majority, a ward executed and delivered to his guardian a receipt for $5475.49 "on final settlement in full of his guardianship accounts with me;" and a copy was filed in the office where guardians' returns were required by law to be filed; this receipt, in fact, represented the balance due upon settlement, and payments were afterwards, and from time to time, made by the guardian to the ward. In a suit upon the guardianship bond instituted by the ward, nine years afterwards—*Held*, that as to the sureties, the action was barred by the statute of limitations.

2. *Smith* v. *Caldwell*, 15 *Rich.* 365, recognized and followed.

Before KERSHAW, J., Laurens, September, 1880.

In this case, Hon. T. B. Fraser, judge of the Third Circuit, sat in the place of Chief Justice Simpson, who had been of counsel in the court below. The case is fully stated in the opinion.

*Messrs. Simpson & Holmes* and *Geo. Johnstone*, for appellants.

*Messrs. R. P. Todd* and *B. W. Ball*, contra.

March 4th, 1881. The opinion of the court was delivered by

FRASER, A. A. J. Henry Madden, one of the defendants, was appointed by the Court of Equity for Laurens District, guardian of the plaintiff, and gave his bond as such on March 29th, 1854, in the penal sum of $3000, with William D. Watts and Samuel R. Todd as sureties.

On December 23d, 1868, about two months before plaintiff arrived at the age of twenty-one years, at the request of his said guardian, he went into the office of H. L. McGowan, then commissioner in equity for Laurens District, and executed a receipt in full to his guardian in the following words:

"DECEMBER 23d, 1868.

"Received of Henry Madden, my guardian, on final settlement, five thousand four hundred and seventy-five dollars and forty-nine cents in full of his guardianship account with me.

"JOHN H. MOTES.

"Test—H. L. McGOWAN."

On the same day the guardian placed a copy of this receipt on file in the office of the commissioner in equity for Laurens District " as his closing return on final settlement of his guardianship of the plaintiff's estate." He carried away with him the original receipt and statement of account on which the receipt was based, and retained possession of them until the commencement of this action, February 15th, 1878.

No money was paid when this receipt was signed, but plaintiff admits that he received afterwards about $2200 in land, a wagon, a horse and buggy, &c. The guardian claims in his testimony that the whole amount due was afterwards paid by him to plaintiff.

After this receipt was given and this final return made, Henry Madden, the guardian, was sued to judgment in two cases: Samuel R. Todd *v.* Henry Madden, judgment $690.37, costs $21.75, interest from May 15th, 1871, and Rebecca Motes *v.* Henry Madden, judgment $485, costs $17.15, interest from January 1st, 1871, both of which are still unsatisfied. During this same period Henry Madden disposed of some of his property to other persons, of the value of which there is no evidence before the court.

Regular annual returns were made by the guardian in the office of the commissioner in equity for Laurens District until this final return.

The guardian was the grandfather of plaintiff. It does not appear that there was any actual notice given to the sureties of the character or existence of this receipt or of the final return.

Henry Madden, the guardian, has died since the commencement of these proceedings, and his estate is properly represented as well as that of W. D. Watts, one of the sureties.

Plaintiff arrived at majority February 21st, 1869, and this

action was commenced February 15th, 1878. The action was, therefore, commenced eight years eleven months and twenty-four days after he came of age.

The referee, James M. Baxter, sustained the plea of the statute of limitations as to the sureties, but held that the estate of the guardian is still liable, and recommended that the representatives of his estate should be allowed to show any further payments made by the guardian in addition to those shown on the reference.

The report of the referee was confirmed by the Circuit judge, and from this decree an appeal has been taken to this court.

"I. Because his Honor erred in not sustaining the exceptions of the plaintiff to the report of the referee, to wit:

"1. That the referee having found as a matter of fact that at the time the receipt was given the plaintiff herein was a minor, and that no money was paid then by Henry Madden to the plaintiff, it is submitted that the referee erred in finding, as a conclusion of law, that said receipt was not void but voidable, and that the plaintiff's right of recovery against the sureties was barred by the statute of limitations.

"2. That the referee having found the receipt represented no payment, but stands as an accounting, fixing the liability of Madden, the guardian, to the plaintiff, his ward, it is submitted that the referee erred in his conclusion that this was a material variation of the relation of principal and surety between Madden and his sureties, and in its operation upon the sureties inequitable and fraudulent.

"3. That the referee erred in not stating the accounts between plaintiff and defendant, Madden, and in leaving the reference open for further credits to be established by the representatives of Madden.

"II. Because there was no act of plaintiff which would release the sureties.

"Because if the sureties should be relieved at all it should only be to the extent of the injury shown to have resulted from the act of plaintiff."

The main question in the case is whether the sureties in the

guardianship bond of Henry Madden are protected by the plea of the statute of limitation.

Here was a receipt in full, which purported to be a final execution of his trust by the guardian, and a copy thereof filed in the proper office as a final return. It is true the ward was then a minor, and no consideration was then given either in money or other property, though large payments were afterwards made in pursuance, it may be assumed, of the understanding between the guardian and his ward.

In *Moore* v. *Porcher, Bail. Eq.* 197, Chancellor Harper, in a Circuit decree which was affirmed in the Court of Appeals, "*per curiam*," uses the following language: "Without any authority to the purpose, I am of the opinion, from the reason and analogy of the law, that when a trustee does an act which purports to be a final execution of his trust, the statute begins to run from that time so as to bar an account." * * * "When he does an act purporting to be an execution of the trust, he shakes off the character of trustee."

In *Glover* v. *Lott*, 1 *Strob. Eq.* 79, a receipt was given by a minor, about seventeen years of age, for $175.12½ in full of her distributive share in an estate. She was married in June following the date of the receipt, February 15th, 1833. In December following the executor made his final return in the Ordinary's office, passing his accounts in which this payment was regularly entered. The court says "that the husband was entitled to demand and receive this legacy on his marriage. * * * It is no violent presumption to say that both complainants (husband and wife) knew, in 1833, that defendant had done an act purporting to be a discharge of his trust. If it was effectual he was discharged. If it was ineffectual the complainants were put on the assertion of their rights," and the plea of the statute was sustained.

In *Coleman* v. *Davis*, 2 *Strob. Eq.* 341, in which the husband, who was a minor, had given a receipt for a legacy to his wife, the Court of Appeals, in reversing the decree on Circuit, says: "The release was a void contract by reason of infancy. But the transaction out of which it arose gave currency to the statute, and

having neglected his remedy for four years after he attained majority, he is barred."

In *Payne* v. *Harris*, 3 *Strob. Eq.* 43, is found the following *dictum* in the Circuit decree, which decree was affirmed in the Court of Appeals: " I take it that an act done in a public office, open for the information of parties interested, must be taken notice of by them, and that the statute obtained currency against the parties mentioned from the date of the division." *Johnston Chancellor.*

In *Long* v. *Cason*, 4 *Rich. Eq.* 60, Cason, the guardian, obtained, on his own motion and without the presence of any person authorized to represent his wards, a decree from the Ordinary, fixing the amount of his liability. The court says in reference to this: " These acts of Cason, purporting to be a full execution of his trust, place him in the character of a stranger to his former wards and their new guardians, and put them on the assertion of their rights at the hazard of losing those rights by lapse of time." The reference is to these acts in a public office, and the *dictum* of Chancellor Johnston, in *Payne* v. Harris, is quoted with approval as applicable thereto.

It seems to be the only proper conclusion that this receipt, given by the plaintiff to his guardian in full of his guardianship account, purported to be a termination of his trust, and that its being used as evidence of a final settlement by placing a copy on file in the proper office, operated as notice to all interested, including the sureties to the guardianship bond.

If this were all, there can be no doubt that all parties, guardian and sureties, would be entitled to claim that the statute commenced to run in their favor from the time the ward came of age. It is claimed, however, that no money was paid at the time, and that full payment has never been made, as was agreed between the guardian and ward when the receipt was given, and that the liability of the guardian thus continued as to himself still exists also as to the sureties. It may be conceded that the guardian is not entitled to plead the statute because of his private agreement with his ward and his subsequent admissions, but it does not appear by what authority the sureties are to be bound by the continuance of his liability beyond the period fixed by a long

line of decided cases for the currency of the statute. The guardian and ward unite in doing an act which, on its face, put the statute in operation, and by a private arrangement, to which the sureties are not parties, and of which they have no notice, so arrange as to postpone for years the time when the statute will begin to run. The sureties may well say that they are not parties to such a compact.

In *Smith* v. *Caldwell*, 15 *Rich.* 365, it is held that when one payment is made by one joint contractor within four years after the accrual of the cause of action, it makes a new starting point as to all of them; but that a second payment within four years from this first payment, but more than four years after the first accrual of the cause of action, does not prevent the bar of the statute as to those joint contractors not concerned in making such second payment. "It does not follow that the implication which arises (says the court) from the personal act of a contractor, and which contemplates a period of four years, must, by a new implication, attach also for another period of four years to a *new* promise made by a co-contractor without the knowledge of the former." "The original contract looked to its *fulfillment* or its bar by the statute." "A distinction between the original contract and the new promise in reference to the authority of one joint contractor to bind the other does annex the statute to the contract."

The accrual of the cause of action takes place when this act is done purporting to terminate the trust, as it does upon the maturity of a note. The creditor and one joint contractor cannot extend the time by any transaction between themselves in the latter case, and it is but a fair application of the principle to hold that a guardian and ward cannot, by a private agreement between themselves, extend the liability of the sureties against the form and effect of a solemn and public act done by them, which, on its face, gives currency to the statute, to the protection of which they are entitled as a part of their original covenant of suretyship.

In this view of the case it is unimportant to consider whether the act of the plaintiff, in signing the receipt while a minor, was void or voidable only, or whether the dealing between the guardian

and ward was such as of itself to discharge the sureties in whole or in part from their obligation, except as above indicated, to give currency to the statute from the time of his attaining his majority. From this time to the commencement of the action is nearly nine years, and no acknowledgment of liability or promise to pay, made by the guardian after the statute commenced to run and within four years thereafter, can extend the liability to the time of the commencement of this action. A promise made on the very last day of the first four years, if not made until then, could not, on the principle of Smith *v.* Caldwell, extend the liability to the commencement of this action, nearly five years after.

Under the special circumstances of this case, the referee not being satisfied to close the accounting, we see no good reason why the representative of Henry Madden may not be very properly allowed to prove, within a reasonable time, any other payments made by him towards the extinguishment of the claim admitted to have been just at the date of the receipt.

It is therefore ordered and adjudged that the judgment of the Circuit Court be affirmed and the appeal dismissed.

McIver and McGowan, A. J.'s, concurred.